Tom BOLACK, Appellant,

v.

SOHIO PETROLEUM COMPANY, a corporation, Appellee.

No. 72–1222.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 14, 1972.

Decided March 28, 1973.

Thomas F. McKenna, Albuquerque, N. M. (Thomas F. McKenna and James E. Sperling, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., on the brief), for appellant.

William Briggs, Albuquerque, N. M. (Rodey, Dickason, Sloan, Akin & Robb, P.A., William C. Briggs, Albuquerque, N. M., on the brief), for appellee.

Before JONES*, SETH and DOYLE, Circuit Judges.

JONES, Circuit Judge:

Tom Bolack, joined by his wife, Alice Bolack, on September 2, 1959, sold and assigned to Sohio Petroleum Company a producing Federal oil and gas lease, reserving a limited term carried working interest.[1] The working interest was to become effective after seven-eighths of the production subsequent to the sale and transfer amounted to 1,500,000 barrels. At the time of this happening Bolack was to be deemed the owner of one-third of seven-eighths of the oil saved and produced from the leased lands until the happening of the first to occur of two conditions set forth in the instrument. The second of these conditions and the one with which the Court is concerned in this controversy is set forth in the instrument in this language: "Until the reasonably estimated quantity of oil that is recoverable from said lands has declined to four hundred thousand (400,000) barrels, as such estimated quantity and the time of such occurrence shall be established in accordance with the subsequent provisions hereof. This condition may be referred to herein as 'Condition Two'."

The instrument provided that in the making of a determination of the time when the 400,000 barrel level had been or would be reached Sohio should submit to Bolack the date ascertained by it as to the time when such level had been or would be reached with all supporting data. Within sixty days after receiving Sohio's date determination Bolack was required to advise Sohio as to whether or not he agreed with such determination. In the event of disagreement the question was to be determined by a petroleum engineer of their joint selection, and, as provided in Paragraph 4.4(c) of the instrument, "if the parties are then unable to agree on the selection

---

* Of the Fifth Circuit, sitting by designation.

[1.] The working interest consists of oil and gas in place on the leased property subject to the royalty interest and burdened with the cost of development and operation of the leased property. The carried interest is an arrangement between two or more co-owners of a working interest whereby one agrees to advance all or some part of the development costs on behalf of the other or others, and to recover such advances from future production. The interest of the one who makes the advances is known as the carrying interest. The interest of the one for whom advances are made is known as the carried interest. C. W. Breeding and A. G. Burton, Income Taxation of Oil and Gas Production, §§ 204, 208 (1961).

of a disinterested petroleum engineer or engineering firm for the purpose of resolving their difference, either party may request the then president of the American Institute of Mining and Metallurgical Engineers to appoint a petroleum engineer or engineering firm for that purpose. The engineer or firm so selected or appointed shall determine the reasonably estimated quantity of oil then recoverable from said lease; if such engineer or firm determines that said quantity has declined to 400,000 barrels he or it shall also determine the date on which such decline occurred. . . . The determination of such engineer or engineering firm shall be made in writing, a signed copy of which shall be furnished to each party hereto, and shall be final and binding on both parties hereto."

Sohio determined that the 400,000 level would be reached on October 21, 1969, and so advised Bolack by letter dated September 3, 1969. Bolack did not agree to Sohio's determination of the date nor did he and Sohio agree upon an engineer or firm to whom the question should be submitted and by whom it should be determined. He advised Sohio, by a letter from his attorneys dated September 11, 1969, that if the matter was not concluded to his satisfaction, "further proceedings specified in" Section 4.4(c) of the instrument would "presumably be the next order of business to be followed herein." Sohio proposed an engineering firm pursuant to the terms of the agreement. Bolack expressly refrained from agreeing or disagreeing with Sohio's proposed designation of an engineering firm. He proposed that any determination of the crucial date be deferred for a year. He advised Sohio that he did not acquiesce in any request by it that the president of the American Institute of Mining and Metallurgical Engineers appoint an engineer or firm to make the determination. He notified Sohio that he would not pay any of the charges of any engineer so appointed. An engineering firm was appointed as provided in the agreement. Again communicating

through his counsel, Bolack transmitted to the engineers information and stated his views as to the proper method of determining the recoverable reserves. In a letter to the engineers Bolack stated that he disagreed "with Sohio as to any responsibility on his part for the costs but that is probably something between him and Sohio."

The engineering firm fixed the time when the reserve declined to 400,000 barrels as the end of June 21, 1969, four months earlier than the Sohio date of October 21, 1969. If the royalty payments to Bolack had been cut off as of June 21 rather than October 21 he would have received $27,028.13 less than that which was paid to him. He refused to refund this to Sohio. He also refused to pay his pro rata share of the charges and expenses of the engineering firm in the amount of $1,247.60. Sohio sued. The jurisdiction is diversity of citizenship. The law of New Mexico governs. Sohio recovered judgment in the district court and Bolack has appealed.

■■■ Bolack contends that the question of when the recoverable reserves declined to the 400,000 barrel level was not properly submitted to the engineers for their determination. This is primarily a factual question. There is no ambiguity in the agreement and the provision for submission to an engineer or engineering firm in the event of a disagreement is clear. These provisions of the agreement were not nullified by the refusal of Bolack to conform to its terms. He recognized that a resort to these contract provisions would "presumably be the next order of business." Although protesting that he would assume no liability for the cost of the determination by the engineering firm, he recognized the submission by giving to the engineers his views as to how their determination should be made. The agreement provided for the procedures which were followed. Bolack will not be heard to assert a contrary contention.

The agreement fixed the liability of the parties for the payment of the engineers as well as for the determination to be made by them. It is urged by

Bolack that he has no liability for the cost and charges made by the engineers for the services which they rendered in making the determination contemplated by the agreement. No reasons sufficient to relieve Bolack of his contractual obligations have been advanced. The liability is clear and the amount of the charge is properly included in the judgment.

■ In its complaint Sohio sought judgment in the amount of the overpayment "as restitution of the monies paid under mistake of fact" and for the amount paid to the engineers. Bolack contends that this is not a proper "mistake of fact" case. At the beginning of the development of the common law there were certain writs which might be issued and if the facts of the plaintiff's case did not fall within the express terms of one of these writs, he was without a remedy. Much more than time has brought us from the Year Books to the Federal Rules of Civil Procedure. The time has long ago passed since it was necessary to fit the facts of a claim within a particular procedural pigeonhole in order to recover. 5 C. A. Wright and A. R. Miller, Federal Practice and Procedure 114 et seq., § 1216 (1969). Whether Sohio's claim for its overpayment was quasi contractual and based on mistake of fact, for money had and received, or founded on the express provisions of the agreement between the parties, need not be here resolved. It should be enough to say that the parties stipulated as to the manner of determining the factual question as to when the 400,000 barrel level was reached. That method was followed. The determination of the fact question made pursuant to the terms of the contract should be made the basis of enforcement by a judgment giving effect to it.

■ The appellant Bolack contends that the payment by Sohio precludes it from recovering on the theory that the amount paid exceeded the amount which was owing. With respect to this assertion, it is enough to say that Bolack declined to treat the payment made as sufficient to discharge Sohio's obligation to him. Since he declined to be bound by Sohio's determination of the pertinent date, it follows that the question was open so far as Sohio was concerned as well as being open to Bolack. The agreement provided that if there was disagreement the factual question should be answered by engineers. The answer determined in accordance with the contract is binding on both parties. 17A C.J.S. 724, 727 Contracts §§ 496(1), 497(1).

■ In making their determination the engineers construed the phrase "oil that is recoverable" as meaning oil that is economically recoverable. Bolack asserted in the district court and contends on this appeal that this standard is improper. None of the canons of construction would permit a standard different from that which the engineers used. See Greer v. Salmon, 82 N.M. 245, 479 P.2d 294. It is impossible to see how the parties could have intended a different standard of measurement than that which the engineers used.

No error is demonstrated in the proceedings before the district court. Its judgment is

Affirmed.